**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HERMES BUSTAMANTE, on behalf of himself and others similarly situated,<br><br>          *Plaintiff*,<br><br>v.<br><br>D.O. PRODUCTIONS, LLC and MCCAIN FOODS USA, INC.,<br><br>          *Defendants*. | Civil Action No. 16-4618<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

The present matter comes before the Court on Defendant D.O. Productions, LLC's[1] ("Defendant" or "D.O. Productions") motion to dismiss the Complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.[2] D.E. 71. Plaintiff Hermes Bustamante ("Plaintiff") opposes the motion on behalf of himself and others similarly situated.[3] This case concerns

---

[1] Defendant McCain Foods USA, Inc. ("McCain") answered the Complaint on October 14, 2016. D.E. 69. Collectively, Defendant D.O. Productions and Defendant McCain will be referred to as "Defendants."

[2] While Defendant also moves pursuant to 12(b)(6), Plaintiff asserts that "[Defendant's] legal arguments do not address Rule 12(b)(6) at all." Pl. Opp'n at 32. Defendant does not respond to this argument, and the Court could not find a Rule 12(b)(6) analysis in Defendant's moving papers. The Court therefore considers Defendant's motion solely pursuant to Rule 12(b)(1).

[3] Defendant's brief in support of its motion to dismiss the Complaint will be referred to hereinafter as "Def. Br." (D.E. 71); Plaintiff's opposition to Defendant's motion to dismiss will be referred to "Pl. Opp'n" (D.E. 75); and Defendant's reply brief will be referred to "Def. R.Br." (D.E. 79).

allegations that Defendants failed to pay Plaintiff, and other similarly situated employees, compensation for rest time and overtime, as required by law. This motion was decided without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. The Court has considered the parties' submissions and denies Defendant's motion without prejudice.

## I. FACTUAL[4] & PROCEDURAL HISTORY

The facts of this matter are derived from Plaintiff's Complaint ("Compl."). D.E. 1. Defendants manufacture frozen foods at their facility in Lodi, New Jersey (the "Lodi Facility"). Compl. ¶¶ 9, 11, 26. The Lodi Facility was owned and operated for many years by Defendant McCain. *Id.* ¶ 27. On or about November 1, 2014, Defendant D.O. Productions bought the business from McCain. *Id.* ¶¶ 13, 27.

Plaintiff was an employee at the Lodi Facility, first for McCain and subsequently for D.O. Productions. *Id.* ¶ 6. Plaintiff alleges that Defendants failed to pay him for compensable rest periods and overtime pay for hours worked in excess of 40 hours per week. *Id.* ¶ 15. Specifically, Plaintiff asserts that he was required to take two rest periods of 20 minutes during his shift, but was only paid for five minutes of each rest period. *Id.* ¶ 28. According to Plaintiff, he should have been paid for the full 20-minute rest periods and overtime wages, where applicable. *Id.* ¶ 30.

Plaintiff filed his Complaint on behalf of himself and similarly situated individuals on July 29, 2016, alleging causes of action for (1) unpaid wages and overtime under the Fair Labor Standards Act ("FLSA"); and (2) unpaid wages and overtime under the New Jersey Wage and Hour Law ("NJWHL"). D.E. 1. On August 17, 2016, Plaintiff filed consent forms on behalf of himself and 41 individuals to participate in the current action. *See* D.E. 6-47. Additional consent

---

[4] When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

forms were filed on August 24, 2016 for ten more individuals, as well as for two more persons on August 31, 2016 and October 5, 2016. D.E. 51-60, 63, 68. On October 12, 2016, Defendant served on Plaintiff and the remaining opt-ins an offer of judgment pursuant to Rule 68.[5] Defendant McCain answered the Complaint on October 14, 2016. D.E. 69. In lieu of answering, Defendant D.O. Productions moved to dismiss the Complaint for lack of subject matter jurisdiction. D.E. 71. Plaintiff opposes Defendant's motion. D.E. 74.

## II. STANDARD OF REVIEW

Rule 12(b)(1) permits a party to move to dismiss a complaint based on "lack of subject matter jurisdiction." *See* Fed. R. Civ. P. 12(b)(1). In deciding a Rule 12(b)(1) motion to dismiss, a court must first determine whether the party presents a facial or factual attack because that distinction determines how the pleading is reviewed. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). "A facial attack concerns an alleged pleading deficiency whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *Young v. United States*, 152 F. Supp. 3d 337, 345 (D.N.J. 2015) (quotations and citation omitted).

Here, the parties dispute whether the proper standard is a factual or facial attack. *See* Pl. Opp'n at 7-9; Def. R.Br. at 2-3. Plaintiff argues that Defendant's motion must be construed as facial because Defendant has not yet filed an answer. Pl. Opp'n at 7-9. Defendant argues that the

---

[5] Federal Rule of Civil Procedure 68 provides, in relevant part:

> At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.

3

Supreme Court and Third Circuit have held that the timing of a motion to dismiss is irrelevant when determining whether the attack is factual or facial. Def. R.Br. at 2-3. Therefore, Defendant contends that the Court should construe its motion as a factual attack and consider allegations outside the pleadings. *Id.* at 3.

Defendant cites to *Bernardi v. Swanson Memorial Lodge No. 48 of the Fraternal Order of Police*, 920 F.2d 198 (3d Cir. 1990) for support. There, the Third Circuit specifically held that the timing of filing a motion to dismiss is not determinative of whether the attack is factual or facial. *Id.* at 200. Thus, the Third Circuit concluded that the defendant's motion was properly considered a factual attack, despite the fact that it was brought pre-answer. *Id.*

While *Bernardi* has not explicitly been overruled, recent Third Circuit cases suggest that only facial attacks, and not factual attacks, can be brought in a motion to dismiss before an answer is filed. *See, e.g., Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) ("The [defendant] filed the attack before it filed any answer to the [c]omplaint or otherwise presented competing facts. *Its motion was therefore, by definition, a facial attack.*" (emphasis added)); *Askew v. Trustees of Gen. Assembly of Church of the Lord Jesus Christ of the Apostolic Faith Inc.*, 684 F.3d 413, 417 (3d Cir. 2012) (concluding that "[a]s the defendants had not answered and the parties had not engaged in discovery, the first motion to dismiss was facial."). Other courts in this district have reached the same conclusion. *See, e.g, Curlin Med. Inc. v. ACTA Med., LLC*, No. 16-2464, 2016 WL 6403131, at *2 (D.N.J. Oct. 27, 2016) (finding that recent Third Circuit cases support the conclusion that factual attacks to jurisdiction can only be brought post-answer); *Smalls v. Jacoby & Meyers, LLP*, No. 15-6559, 2016 WL 354749, at *2 (D.N.J. Jan. 26, 2016) (same).

This Court will follow the recent development in Third Circuit law and construe the present motion as a facial attack, since Defendant brought a pre-answer motion to dismiss for lack of

4

subject matter jurisdiction. Accordingly, "the court must only consider the allegations of the complaint and documents referenced therein . . . in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States,* 220 F.3d 169, 176 (3d Cir. 2000).

### III. DISCUSSION

Even though the Court is reviewing Defendant's motion pursuant to a facial attack, the Court will nevertheless cite to the extraneous factual allegations raised by Defendant so that the record is complete.

<u>Facts Averred by Defendant</u>

Defendant alleges that when it purchased the business from McCain, the Collective Bargaining Agreement ("CBA") in place required production employees, such as Plaintiff, to take two 20-minute rest periods, of which five minutes would be paid. Def. Br. at 2-3. During the months leading up to April 7, 2016, Defendant negotiated a new CBA with production employees. *Id.* In these negotiations, Defendant was represented by "experienced labor counsel"[6] and the production employees were represented by the local union (the "Union"). *Id.* Defendant and the Union ultimately agreed to and ratified the CBA, including the provision for two 20-minute rest periods, of which five minutes were paid. *Id.*

On May 13, 2016, the Wage and Hour Division of the United States Department of Labor ("USDOL") advised Defendant of its intent to investigate Defendant's compliance with the FLSA. *Id.* at 4. Defendant alleges it cooperated with the investigation, including providing USDOL with

---

[6] Even were the Court to consider a factual attack, and thereby consider the additional information cited by Defendant, it would still deny the motion to dismiss at this stage. Defendant makes numerous factual assertions, which the Court would have to find as true, in support of its arguments. For example, as noted, Defendant claims that it was represented by competent, experienced counsel in collective bargaining negotiations and reasonably relied on the advice of such counsel. Such fact-finding is not appropriate at this stage of the proceedings.

5

payroll and time records for all employees for the previous two years. *Id.* After reviewing the records, the USDOL concluded that current and former employees should have been paid for the full 20-minute rest periods taken during their shifts and, where applicable, overtime compensation between November 9, 2014 and June 5, 2016. *Id.* at 5. By a letter dated August 18, 2016, the USDOL advised Defendant of its determination of the specific amount of back wages due to 57 current and former employees. *Id.*

In response, Defendant agreed to pay the back wages recommended by the USDOL. *Id.* The USDOL also prepared a "Receipt for Payment of Back Wages, Liquidated Damages, Employment Benefits, or Other Compensation," Form WH-58, in both English and Spanish, to distribute to each current and former employee who was due payment pursuant to the agreement. *Id.* When Defendant distributed payment and the Form WH-58 to its employees, it also attached a cover letter and rider, which included a release for all claims of back wages, including claims under the NJWHL. *Id.* at 6.[7] Defendant alleges that "[t]o date, 43 of the 57 current and former production employees signed and returned the releases and accepted payment issued to them." *Id.* Two employees received, but did not sign, the releases and accepted the payment issued to them. *Id.* at 7. Thus, 11 employees refused to sign the Form WH-58, the Rider, or accept payment. *Id.*

---

[7] Defendant alleges that it "complied with the USDOL's instruction to distribute such payments and completed waivers to employees along with a cover letter and rider that were reviewed and approved prior to distribution." Def. Br. at 2; *see also id.* at 22 ("[T]he cover letter and rider . . . were approved by the USDOL"). Subsequently, the USDOL wrote to the parties, indicating that while it had reviewed the rider, it expressly disproved of it. D.E. 73-1 at 2-3. Additionally, the USDOL stated that it had never reviewed the cover letter, but had a policy that employers could not attach or distribute additional waiver-related documents to employees with the WH-58 forms. *Id.* at 3. It is troubling, to say the least, that Defendant would send a rider to its employees when the rider had been expressly disapproved by the USDOL. As to Defendant's claim that it erroneously, but in good faith, represented to the Court that the documents had been approved by the USDOL, the Court accepts Defendant's representation.

6

On October 12, 2016, Defendant offered judgment to each of the remaining 11 current and former employees who declined to accept payment, including Plaintiff. *Id.* at 10.

On September 8, 2016, "counsel for Defendant contacted Plaintiff's counsel by telephone and advised of the pending supervised payments." *Id.* at 9. On September 9, defense counsel again contacted Plaintiff's counsel to provide a copy of the documents given to Plaintiff and the other employees in connection with the conclusion of the USDOL investigation. *Id.* In response, Plaintiff's counsel stated that any of the releases signed by his clients "should be considered null and void." *Id.* Plaintiff's counsel later clarified that that by his "clients" they meant "all of [his] clients, *i.e.* all of the employees or former employees of [D]efendants who have submitted FLSA consent forms." *Id.* Thereafter, Defendant sent Plaintiff's counsel a letter, disputing that the releases were null and void, but nevertheless giving Plaintiff's counsel an option to return the payments for those employees who claimed that the releases were invalid. *Id.* at 10. Defendant alleges, and Plaintiff does not dispute, that "[t]o date, Plaintiff's counsel has not returned any payments that were accepted by current or former employees." *Id.*

<u>Waiver</u>

First, Defendant argues that Plaintiff and other putative opt-in class members' claims have been waived, are fully satisfied, or do not exist. Def. Br. at 11. Specifically, Defendant argues that 37 opt-in class members waived their claims against Defendant because they accepted payment in full and signed the Form WH-58 and the rider. *Id.* at 12-13. Additionally, the two individuals who accepted payment but did not sign the Form WH-58 have also waived their claims according to Defendant, since payment in full accompanied by a warning of waiver is sufficient to waive claims under the FLSA. *Id.* at 14-16.

7

Plaintiff argues that it is too early to determine whether the releases signed by Plaintiff and the opt-ins were valid. Pl. Opp'n at 9-10. Thus, without discovery, Plaintiff alleges, "it is unclear whether [Defendant] demanded that the releases be signed or if employees understood what the proffered settlements were even for." *Id.* at 10. Plaintiff also argues that Defendant's improper attachment of cover letters and riders rendered the Form WH-58 null and void. *Id.* at 15-17.

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1527 (2013)). If employers violate the FLSA's provisions, they are liable to affected employees "in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." *Id.* (citing 29 U.S.C. § 216(b)). Employees may bring FLSA claims as collective actions on behalf of themselves and others similarly situated. *Genesis Healthcare Corp.*, 133 S. Ct. at 1527. However, Section 216(c) of the FLSA "provides th[e] right [to bring an action] may be voluntarily waived by the employee or terminated by a suit brought by the Secretary [of Labor]." *Ahmad v. Daniyal Enters., LLC*, No. 14-1142, 2015 WL 6872481, at *3 (D.N.J. Nov. 9, 2015).

The waiver provision authorizes the Secretary of Labor to supervise settlement agreements between employees and employers. It provides as follows:

> The Secretary [of Labor] is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 206 or section 207 of this title, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages....

8

29 U.S.C. § 216(c). "Thus to establish a valid waiver, the FLSA requires that the employee agree to accept the amount tendered, and that the employee receive the payment in full of that amount." *Min Fu v. Hunan of Morris Food Inc.*, No. 12-05871, 2013 WL 5970167, at *4 (D.N.J. Nov. 6, 2013); *see also Dent v. Cox Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1146 (9th Cir. 2007) ("To establish a valid waiver, 29 U.S.C. § 216(c) plainly requires that the employee agree to accept the amount tendered by the employer, and that the employee receive payment in full of that amount."). An agreement is more than mere acceptance of funds, and must exist "independent of payment." *Min Fu*, 2013 WL 5970167, at *4 (citing *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 305 (7th Cir. 1986)).

Both parties agree that 11 persons who opted-in did not sign the proposed waivers or accept the offered payments. Defendant's waiver argument does not apply to these eleven individuals. Instead, Defendant argues that 38 other opt-ins did waive their rights: 36 who accepted payment and signed the waiver and 2 who accepted the payment but did not sign the waiver after receiving it. If the facts alleged by Defendant are true, it appears that the 36 individuals, who accepted payment and signed the Form WH-58, waived their right to bring their FLSA claims.[8] However, reviewing the facts alleged in the Complaint pursuant to a facial attack, the issue of waiver is not

---

[8] Defendant also argues that six other opt-in members are not appropriate: one because he never worked for Defendant and five because they worked as sanitors, who were paid for their full rest periods. Def. Br. at 27. These six opt-ins are therefore not "similarly situated" to Plaintiff, a production employee, as required by the FLSA. *Id.* at 28. Whether or not an opt-in is "similarly situated" to the named plaintiff is a factual determination that should be evaluated at the class certification stage. *See Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013) (finding that courts in the Third Circuit "follow a two-step process for deciding whether an action may properly proceed as a collective action under the FLSA . . . at the first step, the court makes a preliminary determination as to whether the named plaintiffs have made a 'modest factual showing' that the employees identified in their complaint are 'similarly situated.'") (citation omitted). Thus, at this stage, these opt-ins will remain a part of the class.

raised. Moreover, even if the Court were to consider the waivers pursuant to a factual attack, it could not determine at this time the circumstances surrounding the waiver and therefore its validity. This is especially true given the USDOL's concerns with the rider that accompanied the Form WH-58. Defendant essentially asks the Court to accept disputed facts as true. In short, Defendant appears to make a strong argument concerning waiver or, alternately, ratification. But the Court cannot consider such assertions in a facial attack analysis. The appropriate time to consider such arguments is at the class certification or summary judgment stage.[9]

Similarly, Defendant appears to make a valid argument as to the two individuals who accepted payment and received the WH-58 Form, but did not sign the release, also waived their claims. *See Blackwell v. United Drywall Supply*, 362 F. App'x 56, 58 (11th Cir. 2010) (affirming

---

[9] At the appropriate time for reviewing Defendant's waiver argument, the Court will also consider Plaintiff's arguments that the waiver was subject to fraud and duress and therefore is void. "A number of courts have concluded that an employee who signs a WH–58 under duress has not 'agreed' in a manner sufficient to support a release of his FLSA claims." *Guzman v. Concavage Marine Constr. Inc.*, 176 F. Supp. 3d 330, 337 (S.D.N.Y. 2016) (aggregating cases); *see also Victoria v. Alex Car, Inc.*, No. 11-9204, 2012 WL 1068759, at *4 (N.D. Ill. Mar. 29, 2012) (indicating agreement with analysis that "the relevant inquiry in a FLSA waiver situation is whether the plaintiffs intended to settle their claims, and [that] intent can be vitiated in cases of fraud or duress"); *Woods v. RHA/Tennessee Grp. Homes, Inc.*, 803 F. Supp. 2d 789, 800 (M.D. Tenn. 2011) ("[A]n employee's agreement to accept payment and waive his or her FLSA claims is invalid if the employer procured that agreement by fraud or duress.")
At this stage of litigation, the Court cannot determine whether Defendant providing the opt-ins with a cover letter and rider was a misrepresentation of material terms of the waiver. *See Min Fu*, 2013 WL 5970167, at *6 ("The balance between the potential fraud and/or misrepresentation present here and [plaintiff's] potential negligence in signing the document is a question of fact which is premature to consider at this stage of litigation. Defendants are sufficiently on notice of the claims against them, and [plaintiff] should be afforded the opportunity to offer evidence in support of his claims."). Therefore, Plaintiff may raise any issues as to Defendant's misrepresentation in connection with its cover letter and rider when the Court considers the waiver argument.
At the same time, Defendant will be free to argue that even if there was fraud or duress (which Defendant strongly contests), the opt-ins nevertheless ratified the waiver by refusing to return the payments or deposit the monies in escrow.

the district court's holding "that receipt of a WH-58 form and cashing of the employer's check is sufficient to effect a waiver of the right to sue under the FLSA."). Yet, again, a facial attack analysis does not permit the Court to consider such facts. Moreover, even were the Court to consider such allegations, the Court could not determine the precise circumstances surrounding the waiver and thus would not determine whether these two opt-ins waived their rights under the FLSA at this time. The Court therefore denies Defendant's motion.[10]

Liquidated Damages

Defendant also argues that liquidated damages are not warranted as a matter of law because Defendant acted in good faith. Def. Br. at 16. Plaintiff responds that he is entitled to liquidated damages, and that this issue is better decided at the summary judgment stage. Pl. Opp'n at 10-29.

The FLSA permits an award of liquidated damages in an amount equal to any award of economic damages upon a finding that the employer violated the FLSA. *See* 29 U.S.C. § 216(b). Liquidated damages are presumed and are only limited in cases where the employer shows "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 907 (3d Cir. 1991) (quoting 29 U.S.C. § 216). Thus, an employer "must show good faith and reasonable grounds before a court may exercise 'sound discretion' to deny or limit liquidated damages." *Id.* "[A] defendant opposing the award of liquidated damages bears the burden of demonstrating that it acted in subjective good faith on objectively reasonable

---

[10] Both parties also raise numerous other factual issues, including whether acceptance of payment by Plaintiff and the opt-ins ratified the releases and whether Defendant can condition payment of FLSA back wages on an employee's waiver of their rights under state law. *See* Def. Br. at 22-24; Pl. Opp'n at 16-17. Again, Defendant's arguments as to ratification appear plausible, but the Court cannot consider these facts on a motion to dismiss. *See* Def. R.Br. at 7-10. The parties may re-raise such arguments at the motion for summary judgment or certification stage.

11

grounds." *Walsh v. Bril-Jil Enters. Inc*, No. 15-0872, 2016 WL 6246764, at *7 (D.N.J. Oct. 24, 2016) (citing *Martin*, 940 F.2d at 907-08). The employer's burden to demonstrate good faith is "a difficult one to meet." *Punter v. Jasmin Int'l Corp.*, No. 12-7828, 2014 WL 4854446, at *6 (D.N.J. Sept. 30, 2014). "If the employer fails to come forward with plain and substantial evidence to satisfy the good faith and reasonableness requirements, the district court is without discretion to deny liquidated damages." *Brooks v. Vill. of Ridgefield Park*, 185 F.3d 130, 137 (3d Cir. 1999) (quoting *Martin*, 940 F.2d at 907-08). Further, a district court is required to "make findings prior to exercising its discretion on liquidated damages." *Walsh*, 2016 WL 6246764, at *7 (citing *Martin*, 940 F.2d at 907).

Defendant makes four arguments in support of its good faith: (1) that it undertook its actions pursuant to a fully-negotiated CBA; (2) that it used experienced labor counsel to negotiate the CBA; (3) that it cooperated fully in the USDOL investigation; and (4) that there was a reasonable basis in the law to support not paying employees for 20 minute breaks. Def. Br. at 16-22.

The issue of Defendant's good faith is a factual issue, and thus not appropriate to decide at the motion to dismiss stage.[11] The Court does not have all the necessary information to determine that Defendant's actions were taken in good faith. As to Defendant's first argument, the fact that

---

[11] The cases relied on by Defendant were decided at the summary judgment stage. *See, e.g., Brooks*, 185 F.3d at 130; *Featsent v. City of Youngstown*, 70 F.3d 900 (6th Cir. 1995); *Lugo v. Farmer's Pride Inc.*, 802 F. Supp. 2d 598 (E.D. Pa. 2011). Others cases cited by Defendant confirm that a factual analysis is necessary when determining an employer's good faith. *See, e.g., Lugo*, 802 F. Supp. 2d at 616 ("Whether an employer's conduct under the FLSA was in good faith and reasonable is a mixed question of law and fact."); *Pingatore v. Town of Johnston*, No. 11-068S, 2011 WL 6056891, at *6 n.5 (D.R.I. Oct. 31, 2011), *report and recommendation adopted*, No. 11-068, 2011 WL 6097979 (D.R.I. Dec. 6, 2011) ("[T]he issue of liquidated damages . . . requires a factual examination of the totality of circumstances.").

the CBA supports Defendant's position does not alter the fact that Defendant failed to comply with the law. *See Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740–41 (1981) (holding that "congressionally granted FLSA rights take precedence over conflicting provisions in a collectively bargained compensation arrangement.").

As to Defendant's reasonable reliance on the advice of experienced labor counsel, Defendant does not provide (1) the identity of its labor counsel, (2) counsel's relevant experience and training, or (3) all of the underlying facts and circumstances demonstrating Defendant's reasonable reliance. *See* Pl. Opp'n at 23. Without such information, the Court cannot properly analyze Defendant's claim. *See Brumley v. Camin Cargo Control, Inc.*, No. 08-1798, 2010 WL 1644066, at *8 (D.N.J. Apr. 22, 2010) (finding it premature to rule on the issue of liquidated damages when the record was sparse as to the advice received from defendant's attorneys as to compliance with the FLSA).

Defendant's cooperation with the USDOL occurred after Defendant's violation, and therefore is not considered in the Court's good faith analysis. *See Martin*, 940 F.2d at 910 (requiring "*retrospective* analysis of an employer's conduct with respect to violations of the FLSA, not appraisal of an employer's post-violation conduct") (emphasis added). Additionally, Defendant did not uncover a potential violation and voluntarily report it to the USDOL. Instead, Defendant responded to a USDOL investigation, as it is obligated to do. While failure to cooperate can certainly be considered bad faith, *see Dole v. Haulaway Inc.*, 723 F. Supp. 274, 288 (D.N.J. 1989), *aff'd*, 914 F.2d 242 (3d Cir. 1990), complying with a proper USDOL investigation does not necessarily bespeak of good faith.

As to Defendant's legal ambiguity argument, courts have consistently found that the FLSA requires compensation for breaks ranging from five to twenty minutes. *See, e.g., Perez v. Am.*

13

*Future Sys., Inc.*, No. 12-6171, 2015 WL 8973055, at *8 (E.D. Pa. Dec. 16, 2015) ("[C]ourts considering break periods of 20 minutes or less consistently find such breaks compensable in all types of working environments."); *Solis v. Cindy's Total Care, Inc.*, No. 10-7242, 2012 WL 28141, at *9, 19 (S.D.N.Y Jan 5, 2012) (citing § 785.18 to support the conclusion that compensable time "also includes work breaks approximately of 20 minutes or less in duration"); *Martin v. Waldbaum, Inc.*, No. 86-0861, 1992 WL 314898, at *2 (E.D.N.Y. Oct. 16, 1992) (concluding as a matter of law that "breaks of less than twenty minutes are compensable").

Therefore, at this stage, Defendant has not proven that it acted in good faith as a matter of law.

Offers of Judgment

Lastly, Defendant argues that since it served an offer of judgment on the eleven remaining opt-ins (including Plaintiff), their claims are moot. Def. Br. at 24. Since the offer of judgment "provide[s] Plaintiff and the remaining opt-ins with the amount equal to, or greater than, the full amount of damages that the Plaintiff and remaining opt-ins sought," Defendant argues that no further relief is warranted. *Id.* at 27. Thus, pursuant to Federal Rule 67,[12] Defendant seeks leave to deposit the proffered funds with the Court, arguing that it will thereby moot Plaintiff's claims. *Id.* at 27.[13]

---

[12] Rule 67 provides, in pertinent part, that

> [i]f any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party—on notice to every other party and by leave of court—may deposit with the court all or part of the money or thing, whether or not that party claims any of it. The depositing party must deliver to the clerk a copy of the order permitting deposit.

[13] Defendant also argues, in a footnote, that if Plaintiff and the remaining opt-ins refuse to accept the offers of the judgment, they will not be able to meet "the numerosity requirement for collective

14

Plaintiff responds that an unaccepted offer of judgment does not moot his claims, and therefore this Court retains jurisdiction over the Complaint. Pl. Opp'n at 30. Additionally, Plaintiff argues that the offers of judgment are inadequate in that they do not constitute the full potential relief available to Plaintiff and the opt-ins because, among other things, they do not include liquidated damages.[14] *Id.* at 31-32. Without the benefit of discovery, Plaintiff argues, the Court cannot determine that "no further relief is warranted" as Defendant suggests, and Defendant's Rule 67 motion should be denied.

Article III of the United States Constitution limits the jurisdiction of the federal courts to actual cases and controversies. U.S. Const., Art. III, § 2. The Supreme Court interprets this provision to require that "an actual controversy . . . be extant at all stages of review." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016). Thus, "[i]f an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Id.* (quoting *Genesis Healthcare Corp.*, 133 S. Ct. at 1528).

Previously, the Third Circuit considered an offer of complete relief to be an intervening circumstance that "will generally moot the plaintiff's claim," since, "at that point the plaintiff retains no personal interest in the outcome of the litigation." *Weiss v. Regal Collections*, 385 F.3d

---

actions." Def. Br. at 24 n.24. Plaintiff responds that Defendant is incorrect because "[t]here is no numerosity requirement for collective actions." Pl. Opp'n at 32. The Court agrees. "[A] party seeking conditional certification of a collective action need not demonstrate the Rule 23 requirements of numerosity, commonality, typicality, and adequacy of representation." *Jenkins v. TJX Companies Inc.*, 853 F. Supp. 2d 317, 320 (E.D.N.Y. 2012).

[14] Plaintiff also argues that they do not constitute full relief because they do not account for Defendant's potential successor liability for Defendant McCain. Pl. Opp'n at 31-32. Since the potential for liquidated damages defeats Defendant's argument, the Court will not address successor liability at this time.

15

337, 340 (3d Cir. 2004), *abrogated by Gomez*, 136 S. Ct. at 193. However, in *Gomez*, the Supreme Court overruled this holding, concluding that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case." 136 S. Ct. at 672. Thus, "[a plaintiff] still ha[s] a personal stake in the outcome of the litigation even though he was offered complete relief under Rule 68." *Richardson v. Bledsoe*, 829 F.3d 273, 282 (3d Cir. 2016).

Here, neither party disputes that eleven remaining opt-ins, comprised of Plaintiff and ten other individuals, did not accept Defendant's offer of judgment. Nonetheless, Defendant attempts to distinguish *Gomez*, pointing out that the *Gomez* Court declined to consider "whether the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount." 136 S. Ct. at 672; Def. R.Br. at 6. Since Defendant moves to deposit the funds pursuant to Rule 67, it argues that *Gomez* is not controlling.

"In the wake of [*Gomez*], defendants before a number of [] district courts have also sought to use Rule 67 deposits to compel findings of mootness." *Jarzyna v. Home Props., L.P.*, 201 F. Supp. 3d 650, 656 (E.D. Pa. 2016). A "majority of courts to confront Rule 67 motions under such circumstances have denied them." *Id.* (aggregating cases). Nonetheless, the Court does not need to determine whether Defendant's Rule 67 motion moots Plaintiff's claims because the offer of judgment does not afford Plaintiff "complete relief." As discussed, liquidated damages cannot be resolved at this stage. Therefore, the Court cannot rule as a matter of law that Defendant's offer constitutes full relief. *See Dean v. CVS Pharmecy, Inc.*, No. 14-2136, 2015 WL 4470474, at *2 (E.D. Pa. July 21, 2015) (finding that "[the] offer of judgment did not moot the active controversy between the parties due to the ongoing dispute over the sufficiency of the Offer"). Defendant's Rule 67 motion is denied without prejudice.

## IV. CONCLUSION

In sum, the Court **DENIES** Defendant's motion to dismiss without prejudice. The Court also **DENIES** Defendant's motion to deposit funds pursuant to Rule 67. An appropriate Order accompanies this Opinion.

**Date:** August 30, 2017

_____
**JOHN MICHAEL VAZQUEZ**
**UNITED STATES DISTRICT JUDGE**
